LAW OFFICE OF JOHN CLAASSEN
JOHN CLAASSEN, ESQ. (212954)
2201 BROADWAY, SUITE 803
OAKLAND, CA 94612
TELEPHONE: (510) 251-8010
FACSIMILE: (510) 868-3398
john@claassenlegal.com

Attorney for Plaintiffs
KWOK CHO; THAU LONG; HAO LONG; XIAO MIN MA; YAN YUN YU; WAI PAK;
MICHELLE B. REN; WENG SHENG WONG; AND WENG K. WONG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KWOK K. CHO, an individual; THAU LONG, an individual; HAO LONG, an individual; XIAO MIN MA, an individual; YAN YUN YU, an individual; WAI PAK, an individual; MICHELLE B. REN, an individual; WENG SHENG WONG, an individual; and WENG K. WONG, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MAURICE JACKSON, an individual, and aka RTI and aka REAL TIME INVESTMENTS and aka ECONOMIC RESOURCE SERVICES, REAL TIME INVESTMENTS, LLC, a California limited liability company, ECONOMIC RESOURCE SERVICES, a Nevada corporation, VERNA TAIT, an individual, JACQUELYNE ODOM, aka JACKIE ODOM, an individual, aka JACQUELINE ODOM, MAISHA YVONNE PULLIAM, an individual, aka MAISHA YVONNE JACKSON, ECONOMIC REAL ESTATE SOLUTIONS, INC., a California corporation, and DOES 1 THROUGH 100, <br><br> Defendants. | Case No.: C07-06512 JCS <br><br> **(i)** **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (F.R.C.P. 56(a));** <br> **(ii)** **MEMORANDUM OF POINTS AND AUTHORITIES;** <br> **(iii)** **DECLARATIONS OF KWOK K. CHO, HAO LONG, XIAO MIN MA, YAN YUN YU, WAI PAK, MICHELLE B. REN, WENG SHENG WONG, and WENG K. WONG [separate covers];** <br> **(iv)** **REQUEST FOR JUDICIAL NOTICE [separate cover]; and** <br> **(v)** **[PROPOSED] ORDER [separate cover].** <br><br> **Date: May 2, 2008** <br> **Time: 9:30 a.m.** <br> **Dept: Courtroom A, 15th Floor** <br> **Before: Honorable Joseph C. Spero** |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on May 2, 2008 at 9:30 a.m. in Courtroom A, on the 15th Floor of the Federal Courthouse located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph C. Spero, plaintiffs Kwok Cho, Hao Long, Xiao Min Ma, Yan Yun Yu, Wai Pak, Michelle B. Ren, Weng Sheng Wong, and Weng K. Wong ("Plaintiffs") will move the Court pursuant to subjects a and c (and any other applicable subsection) of Federal Rule of Civil Procedure 56 for an order granting partial summary judgment on their claims of breach of contract (Count I), rescission (Count III), and declaratory relief (Count IV) against defendants Maurice Jackson and Verna Tait on the grounds that there is no genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law.

This motion shall be based on this notice of motion, the following memorandum of points and authorities, the declarations of Kwok Cho, Hao Long, Xiao Min Ma, Yan Yun Yu, Wai Pak, Michelle B. Ren, Weng Sheng Wong, and Weng K. Wong, the accompanying request for judicial notice, the accompanying separate state of undisputed material facts, and all other pleadings properly before the Court.

DATED:  March 27, 2008

Respectfully Submitted,

/s/ John Claassen

_____
John Claassen (SBN 212954)
2201 Broadway, Suite 803
Oakland, CA  94612
Telephone: 510-251-8010
Facsimile: 510-868-3398
john@claassenlegal.com

1

## <u>TABLE OF CONTENTS</u>

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................................1

**I.    INTRODUCTION** ............................................................................................1

**II.   STATEMENT OF ISSUE (Civil L.R. 7-4(a)(3))** .........................................2

**III.  STATEMENT OF UNDISPUTED MATERIAL FACTS** ..........................2

**IV.   ARGUMENT** ...................................................................................................7
   **A. GENERAL STANDARD** ..........................................................................7
   **B. THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH
       RESPECT TO PLAINTIFFS' FIRST CAUSE OF ACTION FOR
       BREACH OF CONTRACT.** ......................................................................9
   **C. THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH
       RESPECT TO PLAINTIFFS' THIRD CAUSE OF ACTION FOR
       RESCISSION.** ............................................................................................10

**V.    CONCLUSION** ................................................................................................17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**AUTHORITY:**                                                                                         **PAGE**

Fed. R. Civ. Pr. 56…………………………………………………………………1, 7, 8

15 U.S.C. § 77………………………………………………………………...9, 10, 15

Cal. Corp. Code § 25000……………………………………………………………9, 10

Cal. Corp. Code § 25019……………………………………………………………13

Cal. Corp. Code § 25110………………………………………………………10, 11, 15

Cal. Corp. Code § 25163……………………………………………………………...11, 15

Cal. Corp. Code § 25503……………………………………………………………...11, 15

Cal. Corp. Code § 25504……………………………………………………………11

Securities Act of 1933 §§ 5 & 12……………………………………………………15

Cal. Corp. Securities Act of 1968………………………………………………...10

4 Witkin, Cal. Proc. (1997)…………………………………………………………...9

Friedman, Cal. Practice Guide: Corp. (2008)………………………………………16

**CASES:**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)…………………………..…………………………………8

*Barker v. Norman*
    651 F.2d 1107 (5th Cir. 1981)………..………………………………………7

*Cheng v. Commissioner Internal Revenue Service*
    878 F.2d 306 (9th Cir. 1989)…………………………………………………8

*First Nat'l Ins. Co. v. F.D.I.C.*
    977 F. Supp. 1051 (S.D. Cal. 1977)……………………….……………………8

*Mackey v. Pioneer Nat. Bank*
    867 F.2d 520 (9th Cir. 1989)………………………...….………………………8

1

**TABLE OF AUTHORITIES (cont.)**

2

**CASES:**                                                                                          **PAGE**

3

4    *People v. Park*
       87 Cal. App. 3d 550 (1978)…………………………………………………11

5

   *People v. Schock*
6        152 Cal. App. 3d. 379 (1984)………………………………………………14

7    *Pinter v. Dahl*
       486 U.S. 622 (1988)……………………………………………...10, 16
8

9    *Reves v. Ernst & Young*
       494 U.S. 56 (1990)………………………………………………..12
10

   *Robi v. Five Platters, Inc.*
11        918 F.2d 1439 (9th Cir. 1990)………………………………………...7

12    *Sec. Exch. Comm. v. Cross Financial Services*
       908 F. Supp. 718 (C.D. Cal. 1995)………………………………………12
13

14    *Sec. Exch. Comm. v. Murphy*
       626 F.2d 633 (9th Cir. 1980)………………………………….…14, 15
15

16    *Sec. Exch. Comm. v. Phan*
       500 F.3d 895 (9th Cir. 2007)………………………………………...10
17

18    *Sec. Exch. Comm. v. Platforms Wireless International Corp.*
       04 CV 2105 JM (AJB) (S.D. Cal. January 31, 2008)…………………………10

19    *Sec. Exch. Comm. v. Ralston Purina Co.*
       346 U.S. 119 (1953)……………………………………………10, 11, 15
20

21    *Sec. Exch. Comm. v. R.G. Reynolds Enterprises, Inc.*
       952 F.2d 1125 (9th Cir. 1991)……………………………………...12, 13
22

23    *Sec. Exch. Comm. v. W. J. Howey Co.*
       328 U.S. 293 (1946)……………………………………………12
24

25    *Silver Hills Country Club v. Sobieski*
       55 Cal. 2d 811 (1961)……………………………………………13

26    *Spilker v. Shayne Laboratories*
       520 F.2d 523 (9th Cir. 1975)………………………………………16

27

28

1

<u>**TABLE OF AUTHORITIES (cont.)**</u>

2

<u>**CASES:**</u>                                                                                                        <u>**PAGE**</u>

3

*United Mine Workers v. Gibbs*
383 U.S. 715 (1966)…………………………………………………………………………8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

3

Plaintiffs Kwok Cho, Hao Long, Xiao Min Ma, Yan Yun Yu, Wai Pak, Michelle B.

4

Ren, Weng Sheng Wong, and Weng K. Wong respectfully submit this memorandum of points and

5

authorities in support of their motion for partial summary judgment against defendants Maurice

6

Jackson ("Jackson") and Verna Tait ("Tait"; together "Defendants") pursuant to subjects (a) and (c) of

7

Federal Rule of Civil Procedure 56.

8

### I.        INTRODUCTION

9

The claims in this case arise from an interstate ponzi scheme Defendants operated over

10

the course of years against a number of unsuspecting individuals.  Through their scheme, Defendants

11

solicited investments dressed as promissory notes that offered 50 percent returns and a six-month

12

maturity date.  Defendants bilked scores of investors and, in the process, collected millions of dollars

13

and over $1,300,000 from Plaintiffs themselves.  Although the promissory notes have matured – or are

14

subject to rescission for violation of federal and state securities laws – Defendants have not repaid the

15

investments.

16

In their answer, Defendants admit that they issued promissory notes.  They also admit

17

that they received funds pursuant to these notes from Plaintiffs.  There can be no dispute that they

18

never repaid Plaintiffs the amount due under the promissory notes.  Without any issue of these

19

material facts in dispute, Plaintiffs are entitled to summary judgment on their claims of breach of

20

contract set forth in the First Cause of Action.

21

Summary judgment is also proper against Defendants with respect to Plaintiffs' Third

22

Cause of Action, Rescission.  The promissory notes Defendants issued as investments are securities.

23

Plaintiffs purchased the notes solely for the high returns they offered, relying upon Defendants'

24

representations.  There is no triable issue of fact that Defendants used the means of interstate

25

commerce to issue the promissory notes and that they also issued notes to some of the plaintiffs

26

outside the state of California.

27

28

Because the securities were not registered, nor were they qualified under California securities law, Defendants' scheme without question violates federal and state securities laws as a matter of law.

Further, Defendants can never meet their burden of showing that the offering is exempt from registration or qualification. Summary judgment with respect to Plaintiffs' rescission claim is thus proper.

## II.    STATEMENT OF ISSUE (Civil L.R. 7-4(a)(3))

1.  Whether the Court should issue judgment on Plaintiffs' claim of breach of contract against Defendants.

2.  Whether the Court should issue judgment on Plaintiff's claim of rescission against Defendants.

3.  Whether the Court should issue judgment on Plaintiff's claim of declaratory relief against Defendants.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

On or around October 3, 2005, defendant Maurice Jackson executed and delivered a promissory note to plaintiff Hao Long ("H. Long") in the amount of $60,000. Plaintiff's Statement of Undisputed Material Facts pursuant to Case Management Order ("SUF") ¶ 1.

The promissory note executed and delivered to H. Long had a maturity date of April 3, 2006. SUF ¶ 2.

H. Long paid to defendants the principal amount specified in the promissory note. SUF ¶ 3.

When the note matured, H. Long reinvested, and continued to reinvest at least some of the amount he had invested.    SUF ¶ 4.

On or around October 27, 2006, Jackson paid H. Long the sum of $50,000 but did not return the remainder of the amount due under the promissory note. SUF ¶ 5.

Under the last reinvestment, H. Long was to receive payment in full no later than June 1, 2007.  SUF ¶ 6.

To date, H. Long has not received payment as promised and therefore is now due and owed the unpaid sum of $10,000, as payment has not been excused.  SUF ¶ 7.

On or around December 5, 2006, Jackson executed and delivered a promissory note to plaintiff Xiao Min Ma ("Ma") in the amount of $200,000.  SUF ¶ 8.

The promissory note executed and delivered to Ma had a maturity date of April 26, 2007. SUF ¶ 9.

Ma paid to Defendants the principal amount specified in the promissory note on or around the date the promissory note was executed. SUF ¶ 10.

In or around June, 2007, Defendants paid to Ma $20,000 to provide to Plaintiff Yan Yun Yu, but did not pay the $200,000 owed to Ma.  Ma provided Yu with the $20,000.  SUF ¶ 11.

To date, Ma has not received payment as promised under the investment and therefore is now due and owed the unpaid sum of $200,000, as payment has not been excused.  SUF ¶ 12.

On or around December 5, 2006, Jackson executed and delivered a promissory note to plaintiff Yan Yun Yu ("Yu") in the amount of $130,000. SUF ¶ 13.

The promissory note executed and delivered to Yu had a maturity date of April 26, 2007. SUF ¶ 14.

Yu paid to Defendants the principal amount specified in the promissory note.  SUF ¶ 15.

Ma paid Yu $20,000 in or around June, 2007, that she received from defendants.  To date, Yu has not received payment as promised for the rest of her investment and is therefore now due and owed the unpaid sum of $110,000, as payment has not been excused.  SUF ¶ 16.

On or around December 8, 2006, Jackson executed and delivered a promissory note to plaintiff Wai Pak ("Pak") in the amount of $99,150.  SUF ¶ 17.

The promissory note executed and delivered to Pak had a maturity date of May 27, 2007. SUF ¶ 18.

Pak paid to Defendants the principal amount specified in the promissory note.  SUF ¶ 19.

1

2

To date, Pak has not received payment as promised and therefore is now due and owed the unpaid sum of $99,150, as payment has not been excused.   SUF ¶ 20.

3

4

On or around December 8, 2006, Jackson executed and delivered a promissory note to plaintiff Kwok K. Cho ("Cho") in the amount of $200,000.  SUF ¶ 21.

5

6

The promissory note executed and delivered to Cho had a maturity date of May 4, 2007. SUF ¶ 22.

7

Cho paid to Defendants the principal amount specified in the promissory note. SUF ¶ 23.

8

9

To date, Cho has not received payment as promised and therefore is now due and owed the unpaid sum of $200,000, as payment has not been excused.  SUF ¶ 24.

10

11

On or around December 8, 2006, Jackson executed and delivered a promissory note to plaintiff Michelle B. Ren ("Ren") in the amount of $27,000.  SUF ¶ 25.

12

13

The promissory note executed and delivered to Ren had a maturity date of May 27, 2007. SUF ¶ 26.

14

Ren paid to Defendants the principal amount specified in the promissory note.  SUF ¶ 27.

15

16

To date, Ren has not received payment as promised and therefore is now due and owed the unpaid sum of $27,000, as payment has not been excused.  SUF ¶ 28.

17

On or around January 26, 2007, Jackson executed and delivered a promissory note to plaintiff Weng Sheng Wong ("WS Wong") in the amount of $40,000.  SUF ¶ 29.

18

19

The promissory note executed and delivered to WS Wong had a maturity date of May 27, 2007.  SUF ¶ 30.

20

21

WS Wong paid to Defendants the principal amount specified in the promissory note.  SUF ¶ 31.

22

23

To date, WS Wong has not received payment as promised and therefore is now due and owed the unpaid sum of $40,000, as payment has not been excused.  SUF ¶ 32.

24

25

On or around February 12, 2007, Jackson executed and delivered a promissory note to plaintiff Weng K. Wong ("WK Wong") in the amount of $190,000.  SUF ¶ 33.

26

27

The promissory note executed and delivered to WK Wong had a maturity date of July 5, 2007. SUF ¶ 34.

28

WK Wong paid to Defendants the principal amount specified in the promissory note. SUF ¶ 35.

To date, WK Wong has not received payment as promised and therefore is now due and owed the unpaid sum of $190,000, as payment has not been excused. SUF ¶ 36.

On or around March 15, 2007, Verna Tait, on behalf of defendants, executed and delivered an investment agreement to WS Wong pursuant to which she accepted the sum of $120,000 in exchange for the promise to deliver a promissory note to WS Wong in the principal amount of $120,000. SUF ¶ 37.

The investment was to have a period of six months with a maturity date of September 22, 2007. SUF ¶ 38.

WS Wong paid to Defendants the principal amount specified for the investment. SUF ¶ 39.

To date, WS Wong has not received payment as promised and therefore is now due and owed the unpaid sum of $120,000, as payment has not been excused. SUF ¶ 40.

Plaintiffs are several of many investors who purchased promissory notes from Defendants. SUF ¶ 41.

The promissory notes were marketed, promoted, and sold through defendant Real Time Investments ("Real Time"). SUF ¶ 42.

Tait was a principal officer of Real Time. SUF ¶ 43.

As an officer of Real Time, Tait routinely led investment presentations for potential investors like plaintiffs. SUF ¶ 44.

During the presentations, Tait talked about the "investment services" available to Real Time customers. She told investors that Real Time had developed a "unique and creative" way of sustaining returns on investment. She told investors, "We utilize a variety of real estate channels to produce high growth returns on investments." She described the terms of the investment. She offered prospective investors the opportunity to invest by meeting with an advisor or principal of the firm. SUF ¶ 45.

Tait advertised that Real Time had helped over "1,100 investors achieve their financial goals." SUF ¶ 46.

1

2

At the end of the investor presentations, Tait routinely met with potential investors to encourage them to invest.  SUF ¶ 47.

3

Tait executed investment documents on behalf of Real Time.  SUF ¶ 48.

4

Tait received money from Plaintiffs.  SUF ¶ 49.

5

Tait communicated with investors as the investments matured.  SUF ¶ 50.

6

7

The investments were purchased by, among others, investors who lived in states outside of the State of California, such as Oregon.  SUF ¶ 51.

8

9

Investment documents were distributed to investors using the United States Postal Service.  SUF ¶ 52.

10

11

Potential investors routinely called Tait at Real Time's office to ask Tait about the terms of their investment.  SUF ¶ 53.

12

Investors communicated with Jackson and Real Time personnel using e-mail.  SUF ¶ 54.

13

14

Defendants issued the promissory notes set forth in Exhibits A through J of the Amended Complaint.  SUF ¶ 55.

15

16

Defendants issued the investment document set forth in Exhibit K of the Amended Complaint.  SUF ¶ 56.

17

The notes and other document were marketed as investments.  SUF ¶ 57.

18

Each of the promissory notes alleged in the Amended Complaint was labeled on its face as an "investment."  SUF ¶ 58.

19

The document set forth in Exhibit K reflects on its face an investment.  SUF ¶ 59.

20

21

But for the extraordinary returns offered by the promissory notes, Plaintiffs would not have purchased them.  SUF ¶ 60.

22

23

The promissory notes were not registered by the Securities and Exchange Commission.  SUF ¶ 61.

24

25

The promissory notes were not qualified by the California Department of Corporations.  SUF ¶ 62.

26

Some of the promissory notes issued to Plaintiffs are, by their terms, unsecured.  SUF ¶ 63.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The remaining promissory notes were secured only by property that Jackson, the issuer, did not own.  SUF ¶ 64.

In addition, Defendants granted multiple security interests in the same property such that the security interests they conveyed were valueless.  SUF ¶ 65.

Ma and Yu agreed to reinvest all or part of their notes on or around April 14, 2007.  Tait executed their reinvestments.  SUF ¶ 66.

H. Long also reinvested.  SUF ¶ 67.

The reinvestments were a mere continuation of prior investments with the same high interest.  SUF ¶ 68.

Like their original investments, Ma's, Yu's, and H. Long's reinvestments were marketed to them as investments.  SUF ¶ 69.

Their reinvestment documents, when issued, were labeled on their face as "investments."  SUF ¶ 70.

But for the extraordinary returns offered by the terms of the reinvestment, Ma, Yu, and H. Long would not have reinvested. SUF ¶ 71.

The reinvestments were not registered by the Securities and Exchange Commission.  SUF ¶ 72.

The reinvestments were not qualified by the California Department of Corporations.  SUF ¶ 73.

## IV.     ARGUMENT

### A.     GENERAL STANDARD

Federal Rule of Civil Procedure section 56(a) provides that a party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim.  The motion may be filed at any time after "20 days have passed from commencement of the action."  Fed. R. Civ. Pr. 56(a)(1).

Under Federal Rule of Civil Procedure 56(c), a summary judgment or adjudication motion need not dispose of the entire case.  Rather, "[i]n cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to

1
2
3
4
5
6

some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989) (appeal from order granting partial summary on single claim of exemption from tax liability). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.,* 977 F. Supp. 1051, 1055 (S.D. Cal. 1977).

7
8
9
10
11
12
13
14

    A district court's determination of claims, be they state or federal, is also proper when the state and federal claims derive from a common nucleus of operative fact, as they do here. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ([T]he Federal Rules of Civil Procedure "embody the whole tendency of [Supreme Court] decisions … to require a plaintiff to try his … whole case at one time …, and to that extent emphasize the basis of pendent jurisdiction." (citation omitted)). Ruling on state and federal claims together encourages judicial economy and efficiency. *See Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 523 (9th Cir. 1989) (finding that district court's determination of state contract and tort claims was proper even though federal claim was ultimately dismissed).

15
16
17
18
19
20
21
22
23

    On summary judgment or adjudication, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Summary judgment or adjudication should be granted when there is no genuine issue of material fact or, upon viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *Sec. & Exch. Comm. vs. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980) (affirming order granting summary judgment in favor of plaintiff in action against sellers of unregistered securities). "[S]ubstantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

24
25
26
27
28

**B.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT
WITH RESPECT TO PLAINTIFFS' FIRST CAUSE OF
ACTION FOR BREACH OF CONTRACT.**

The Court should award judgment as a matter of law in favor of Plaintiffs.[1]   Under California law, a cause of action for breach of contract requires a pleading of the contract, a plaintiff's performance or excuse for nonperformance, a defendant's breach, and damage to plaintiff.  4 Witkin, Cal. Proc. 4th (1997) Plead., § 476, at 570.

As noted above, Defendants admit they executed the promissory notes and that they accepted payment from Plaintiffs in the amounts alleged.  SUF ¶¶ 1, 3, 8, 10, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35.   The only remaining questions are whether (i) the promissory notes have matured, and (ii) whether Defendants have made payments.

The promissory notes and documents indicate clearly that they matured six months after their dates of execution.  SUF ¶¶ 2, 9, 14, 18, 22, 26, 30, 34 and 38.  Each of the maturity dates listed on the notes has passed.  SUF ¶¶ 2, 9, 14, 18, 22, 26, 30, 34, and 38.  None has been repaid. SUF ¶¶ 5, 7, 11, 12, 16, 20, 24, 28, 32, 36, 40.  Payment has not been excused.  SUF ¶¶ 7, 12, 16, 20, 24, 28, 32, 36, and 40.

Without any dispute of material fact, Plaintiffs are entitled to judgment against Defendants as a matter of law.

Tate is also liable for breach of contract to the extent she executed the investment documents on which Plaintiffs sue, including <u>Exhibit K</u> to the Amended Complaint, on behalf of Defendants.

---

[1] The Court can and should exercise supplemental jurisdiction over the state law claims that are the subject of this motion for partial summary judgment.  As a preliminary matter, the Court has subject matter jurisdiction over the Securities Act (as defined below) claims.   28 U.S.C. § 1332.  In addition, the Court has supplemental jurisdiction over the state law claims asserted herein.  28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.") (alteration added).   Here, Plaintiffs' state law contract and securities claims arise from the same common nucleus of operative facts as the federal claims and the Court's exercise of supplemental jurisdiction is proper.  *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

1

**C.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO PLAINTIFFS' THIRD CAUSE OF ACTION FOR RESCISSION.**

2

3         Defendants' interstate ponzi scheme also violates federal and state securities laws,

4    which outlaw the offer or sale of security when no registration statement is in effect or when the

5    securities have not been qualified by the California Department of Corporations.  The federal

6    Securities Act of 1993, codified at Title 15, United States Code section 77a, *et seq.* (the "Securities

7    Act") supplies relevant federal law.  California's Corporate Securities Act of 1968, codified at

8    California Corporations Code section 25000, *et seq.* (the "CCSA") supplies relevant state law.

**1.    The Securities Regulation Scheme.**

9

10        *Federal Securities Laws.*  Section 5 of the Securities Act prohibits an issuer from

11    offering or selling unregistered securities.  15 U.S.C. § 77e.  To establish a violation of this section, a

12    plaintiff must show only that (1) no registration statement was in effect as to the securities; (2) the

13    defendants sold or offered to sell the securities; and (3) the sale or offer was made through interstate

14    commerce.  *Sec. Exch. Comm. v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) (affirming summary

      judgment for plaintiff on a Section 5 claim).

15        Violations under section 5 do not require allegations or proof that a defendant acted

16    with scienter.  *Sec. Exch. Comm. v. Platforms Wireless International Corp.*, 04 CV 2105 JM (AJB),

17    2008 WL 28112, slip op. at *5 (S.D. Cal. January 31, 2008) ("[S]cienter is not an element of a § 5

18    violation.").  Rather, ***section 12(a)(1) of the Securities Act imposes strict liability for violations of the***

19    ***registration requirements.***  *Pinter v. Dahl,* 486 U.S. 622, 638 (1988) ("***The registration requirements***

20    ***are the heart of the Act, and § 12(1) imposes strict liability for violating those requirements.***")

21    (citations omitted; emphasis added).

22        Decisions interpreting the Securities Act make clear that ***anyone*** who offers or sells

23    securities like Jackson or Tait is deemed to be the issuer – and is thus liable an issuer – for any

24    violation of the Securities Act.  *Id.* at 646.  Indeed, the Supreme Court has found that "[a]n

25    interpretation of statutory seller that includes . . . [persons] who solicit offers to purchase securities

26    furthers the purpose of the Securities Act – to promote full and fair disclosure of information in the

27

28

sales of securities." *Id.* Such *in terrorem* liability exists, the Court opined, precisely because "the risk of liability should be felt by solicitors of purchases." *Id.*

In light of the broad remedial purposes of the Securities Act, issuers like Tate and Jackson bear the burden of proving the applicability of an exemption. *Sec. Exch. Comm. v. Ralston Purina Co*., 346 U.S. 119, 126 (1953) ("Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable.").

*The States Securities Scheme.*  Similarly, California law imposes strict liability anytime someone fails to qualify securities under California Corporations Code section 25110 unless an exemption is in effect.  Cal. Corp. Code §§ 25110 (requiring qualification of securities); 25503 (entitling purchaser to rescind).  That section provides:

> It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 (and no order under Section 25140 or subdivision (a) of Section 25143 is in effect with respect to such qualification) or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with Section 25100) of this part. The offer or sale of such a security in a manner that varies or differs from, exceeds the scope of, or fails to conform with either a material term or material condition of qualification of the offering as set forth in the permit or qualification order, or a material representation as to the manner of offering which is set forth in the application for qualification, shall be an unqualified offer or sale.

A defendant bears a statutory burden of showing that a valid exemption to qualification exists under the CCSA.  Cal. Corp. Code § 25163 ("In any proceeding under this law, the burden of proving an exemption or an exception from a definition is upon the person claiming it.").  *See also People v. Park*, 87 Cal. App. 3d 550 (1978) ("[C]ase law has consistently held" that a private offering exemption "is not an element of the prohibited sale of a security . . . but constitutes only a defense which is to be proven by the defendant.").

Like federal law, California law makes clear that any actor like Tate who (i) is a principal officer or (ii) is otherwise an employee who materially assists an issuer in violating the

registration, disclosure, or qualification provisions of the federal and state securities laws is jointly and severally liable for the non-disclosure.  Cal. Corp. Code § 25504.  California Corporation Code section 25504 provides:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Applying the well-established federal and state precedents to the instant case, no triable issue of fact exists regarding Defendants' liability under federal and state securities laws.

### 2.    The Notes and Reinvestments Constitute Securities.

*The Promissory Notes Are Securities Under Federal Law.*  Defendants cannot dispute that the offering they made to Plaintiffs and the 1,100 other people they have "helped achieve their financial objectives" (SUF ¶ 46) over the years constitutes a distribution of "securities" as those instruments are defined in relevant federal and state securities laws.

Courts applying federal law to determine whether a financial interest constitutes an "investment contract" apply the three-prong test established in *Sec. and Exch. Comm. v. W. J. Howey Co.*  328 U.S. 293 (1946).  The elements of this – as established by the Supreme Court in that decision – are (1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits produced by the efforts of others.  *See Sec. and Exch. Comm. v. R.G. Reynolds Enterprises, Inc.,* 952 F.2d 1125 (9th Cir. 1991) (citing *Howey*).

Under federal law, a promissory note is "presumed to be a security unless it falls into certain judicially created categories that obviously are not securities or bears a 'family resemblance' to notes in those categories."  *Id.* at 1131 (citing *Reves v. Ernst & Young*, 494 U.S. 56 (1990)); *see also Sec. Exch. Comm. v. Cross Financial Services*, 908 F. Supp. 718, 728 (C.D. Cal. 1995)

(affirming summary judgment against defendants for sale of promissory notes that were deemed securities and unregistered).

"Family resemblance" is determined, in part, by reference to "the motivation for entering the transaction" and "an instrument is likely to be a security '[i]f . . . the buyer is interested primarily in the profit the note is expected to generate.'" *Id.* (citation omitted; alteration added).

Here, Defendants' "investment" scheme – pursuant to which they "helped" more than 1,100 clients achieve their "financial goals" (SUF ¶ 46) constitute the illicit sale of securities under both federal and state law.  The purported real estate investment scheme depended solely on the "skill" of the managers, who supposedly had a new way of investing in real estate.  This statement is true both because the notes were unsecured (SUF ¶¶ 63 -65) and because, **on their face, the investments required no active role on behalf of the investors other than furnishing cash.  SUF ¶¶ 1, 8, 13, 17, 21, 25, 29, 33, and 37.**  Indeed, investors played no role in the investments.  The securities were distributed broadly to the public to the extent Real Time had helped more than 1,100 people "achieve their financial objectives".  SUF ¶ 46.  The plain language of the investment contracts conceded the "investment" nature of the transactions.  SUF ¶ 58.  Plaintiffs invested substantial sums of money in a supposed real estate investment firm solely in the expectation of receiving a substantial profit.  SUF ¶ 60.  Indeed, the 50 percent interest promised under the notes show that Plaintiffs were interested solely in the profit they expected the notes to generate.  *Id. See Reynolds Enterprises,* 952 F.2d 1125.

*The Promissory Notes Are Securities Under the CCSA.*  Courts applying the CCSA refer to Corporations Code section 25019 for the definition of a "security."   Under Corporations Code section 25019 a "'[s]ecurity' means any note; stock; treasury stock; membership in an incorporated or unincorporated association; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral trust certificate . . .".  That section "defines a security broadly to protect the public against spurious schemes, however ingeniously devised, to *attract risk capital.*"   *Silver Hills Country Club v. Sobieski,* 55 Cal. 2d 811, 814 (1961) (finding as a matter of law that an interest in country club was a security).

1    In California, courts have both followed federal guidance on the definition of a security

2 or apply a "risk capital" test set forth in *Silver Hills*. *People vs. Schock*, 152 Cal. App. 3d 379, 386

3 (1984) (reviewing with approval federal authorities and citing the risk capital test in *Silver Hills*).

4 Under the risk capital test, "a finding of inadequacy of collateral, in addition to the investors'

5 dependency on the promoter's success for a return on the investment, will subject the superficial loan

6 transaction to security regulation." *Id.* (reversing order dismissing a complaint brought by the

7 California Department of Corporations alleging that a fractional share of a promissory note constituted

8 a security). Indeed, under California law, anytime a promissory note is not secured by real property, it

9 comes within the regulation of the Department of Corporations. *Id.* at 390 ("The exemption [of a

10 promissory note] from corporate security regulations has been consistently limited to a single

11 promissory note secured by real property traditionally within the jurisdictional supervision of the Real

12 Estate Commissioner.") (alteration added).

13    Because Defendants' ponzi scheme constituted the distribution of securities under

14 federal law, it constituted the same under state law. Moreover, Plaintiffs relied solely on the efforts

15 of Defendants for a return. Their promissory notes were not secured. As a result, their investments

16 were not exempt under the CCSA and they constitute the distribution of securities.

17    **3.    The Transactions Complained Of Were Part Of A Single Offering.**

18    As noted above, Defendants sold securities to many plaintiffs and others investors and

19 at different times. Under the circumstances, the Court should consider all of the transactions together

20 as a single violation of the federal securities laws. Courts use five factors to determine whether

21 offerings separated by time, issuer or other factors are but a single offering. *See Sec. and Exch.

22 Comm. vs. Murphy,* 626 F.2d 633, 645 (9th Cir. 1980) (affirming summary judgment in favor of the

23 plaintiff and finding that defendants' sale of interests in 30 different partnerships constituted a single

24 offering). Those factors include (a) whether the offerings are part of a single plan of financing; (b)

25 whether the offerings involve issuance of the same class of securities; (c) whether the offerings are

26 made at or about the same time; (d) whether the same kind of consideration is to be received; and (e)

whether the offerings are made for the same general purposes. *Id.*

27

28

Here, defendants sold nearly identical promissory notes, each promising 50 percent interest and a maturity date of six months.  The class of securities was the same.  The scheme of marketing and selling the promissory notes was the same.  The purpose of each of the offerings was the same: to bilk investors out of thousands of dollars.  Under the circumstances, the offering here was the same. *Sec. and Exch. Comm. vs. Murphy,* 626 F.2d at 645.

It makes no difference that Defendants failed to document some of the reinvestments.  As noted above, the reinvestments were made on the same terms as the original investment.

### 4.    The Notes and Reinvestments were Unregistered and Unqualified.

None of the promissory notes issued by Defendants was registered or qualified under federal and state securities laws and as a result, they violated Title 15 United States Code section 77e and Corporations Code section 25110.  SUF ¶ 61-65.  Because Defendants will never be able to meet their burden of showing that an interstate ponzi scheme is exempt from the application of securities laws, Plaintiffs are entitled to rescission as a matter of law under federal law.  *Ralston Purina,* 346 U.S. at 126; Corp. Code § 25163.

Moreover, Plaintiffs are entitled to rescind the promissory notes transactions under California Corporations Code section 25503 (rescission for failure to qualify securities).

### 5.    The Notes And Reinvestments Were Sold Using Instrumentalities of Interstate Commerce.

As noted above, Defendants' issuance of the securities at issue here was part of a single distribution of unlawful securities that (i) involved residents of Oregon (SUF ¶ 51); (ii) the use of e-mails to distribute and promote investments (SUF ¶ 54); and (iii) the use of U.S. mail and e-mail to distribute documents to many of the investors in connection with their investments (SUF ¶ 52, 53, and 54) and the use of telephones.  SUF ¶ 53.

The use of such instruments for the purpose of offering and selling unregistered and unqualified securities puts Defendants' acts within the clear ambit of sections 5 and 12 of the Securities Act of 1933.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

It is literally hornbook law that the interstate commerce prong of the federal securities laws is interpreted "broadly." C. Hugh Friedman, California Practice Guide: Corporations (Rutter 2008) ¶ 5-B:22. Significantly, the requisite use of interstate commerce facilities exists *if any part* of the transaction was accomplished through use of such facilities. *Id. See also Spilker vs. Shayne Laboratories,* 520 F.2d 523, (9th Cir. 1975) (holding that two intrastate phone calls made in connection with the sale of securities satisfies the interstate commerce element of a securities violation under SEC Rule 10b-5).

### 6.    Defendants Sold or Offered to Sell the Securities.

Defendants admit in their Answer that Jackson issued promissory notes to Plaintiffs. SUF ¶¶ 1, 8, 13, 17, 21, 25, 29, and 33. Moreover, there is no material dispute that they issued Exhibit K to the Amended Complaint. SUF ¶ 37. As such, Jackson is strictly liable for the sale of unregistered and unqualified securities.

In addition, as noted above, federal securities laws make clear that anyone who offers or sells securities is deemed an issuer. *Pinter*, 486 U.S. at 646. In the instant case, Tait executed investment agreements. SUF ¶ 48. She received money. SUF ¶ 49. She was an executive officer of Real Time, SUF ¶ 43, which marketed and sold the investments. SUF ¶ 42. She gave investor presentations to potential investors in which she explained the benefits of investing. SUF ¶¶ 44-45. She met with potential investors. SUF ¶ 47. She executed reinvestments for plaintiff Xiao Min Ma and Yan Yun Yu. SUF ¶¶ 66. Under the circumstances, there is no question of material fact regarding her liability and judgment should be entered in favor Plaintiffs against her.

1

2

3
### V.    CONCLUSION

4
For the foregoing reasons, Plaintiffs respectfully request that the Court grant this

5
motion in its entirety.

6
DATED: March 27, 2008                              Respectfully Submitted,

7
                                                   /s/ John Claassen

8

9                                                  _____
                                                   John Claassen (SBN 212954)

10                                                 2201 Broadway, Suite 803
                                                   Oakland, CA  94612

11                                                 Telephone: 510-251-8010
                                                   Facsimile: 510-868-3398

12                                                 john@claassenlegal.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28