1  LAW OFFICE OF JOHN CLAASSEN
   *JOHN CLAASSEN, ESQ. (212954)*
2  2201 BROADWAY, SUITE 803
   OAKLAND, CA 94612
3  TELEPHONE:  (510) 251-8010
   FACSIMILE:  (510) 868-3398
4  john@claassenlegal.com

5  Attorney for Plaintiffs
   KWOK CHO; THAU LONG; XIAO MIN MA; YAN YUN YU; WAI PAK;
6  MICHELLE B. REN; WENG SHENG WONG; AND WENG K. WONG

7
                    **UNITED STATES DISTRICT COURT**
8
                    **NORTHERN DISTRICT OF CALIFORNIA**
9

10 | KWOK K. CHO, an individual; THAU          ) Case No.: C07-06512 JCS
   | LONG, an individual; HAO LONG, an         )
11 | individual; XIAO MIN MA, an individual;   )
   | YAN YUN YU, an individual; WAI PAK, an    ) **DECLARATION OF XIAO MIN MA**
12 | individual; MICHELLE B. REN, an           ) **IN SUPPORT OF PLAINTIFFS'**
   | individual; WENG SHENG WONG, an           ) **MOTION FOR PARTIAL**
13 | individual; and WENG K. WONG, an          ) **SUMMARY JUDGMENT**
   | individual,                               )
14 |                                           )
   |                                           )
15 |         Plaintiffs,                       )
   |                                           )
16 |    v.                                     ) **Date: May 2, 2008**
   |                                           ) **Time: 9:30 a.m.**
17 |                                           ) **Dept: Courtroom A, 15th Floor**
   | MAURICE JACKSON, an individual, and       ) **Before: Honorable Joseph C. Spero**
18 | aka RTI and aka REAL TIME                 )
   | INVESTMENTS and aka ECONOMIC              )
19 | RESOURCE SERVICES, REAL TIME              )
   | INVESTMENTS, LLC, a California limited    )
20 | liability company, ECONOMIC RESOURCE      )
   | SERVICES, a Nevada corporation, VERNA     )
21 | TAIT, an individual, JACQUELYNE           )
   | ODOM, aka JACKIE ODOM, an individual,     )
22 | aka JACQUELINE ODOM, MAISHA               )
   | YVONNE PULLIAM, an individual, aka        )
23 | MAISHA YVONNE JACKSON,                    )
   | ECONOMIC REAL ESTATE SOLUTIONS,           )
24 | INC., a California corporation, and DOES 1)
25 | THROUGH 100,                              )
   |                                           )
26 |         Defendants.                       )
27 |                                           )

28

**DECLARATION OF XIAO MIN MA**                                **C07-06512 JCS**

## DECLARATION OF XIAO MIN MA

I, Xiao Min Ma, declare as follows:

1. I am plaintiff Xiao Min Ma in the above-captioned action. I submit this declaration in support of plaintiffs' motion for partial summary judgment. I have personal knowledge of the facts set forth herein and could and would testify competently thereto if asked to do so.

2. On or around December 5, 2006, Jackson executed and delivered a secured promissory note to me in the principal amount of $200,000 in the form attached to the complaint as Exhibit D.

3. The promissory note executed and delivered to me had a maturity date of April 26, 2007.

4. I paid to Jackson and Tait the principal amount specified in the promissory note on or around the date the promissory note was executed.

5. In or around June, 2007, defendants paid me $20,000 to provide to Plaintiff Yan Yun Yu, but defendants did not pay the $200,000 owed to me. I provided Yu with the $20,000.

6. To date, I have not received payment as promised under the investment and therefore am now due and owed the unpaid sum of $200,000, as payment has not been excused.

7. Aside from investing in Real Time, I worked for defendants Maurice Jackson ("Jackson") and Verna Tait ("Tait") for several years between May 9, 2005 and June 2006 at Economic Real Estate Solutions ("ERS"). Attached hereto as Exhibit A is a true and correct copy of a letter drafted by Jackson's assistant showing I was employed at ERS. ERS and Real Time shared the same office space at 440 Grand Avenue, in Oakland, California. Tait often switched between work for Real Time and ERS. I sometimes helped Tait on matters related to Real Time. I took messages for her. I answered phones.

8.   I worked directly for defendant Verna Tait between December 2005 and June 2006 as an employee of ERS. I know from my work for her and at ERS that she also was principal officer and orchestrator of defendant Real Time.

9.   Plaintiffs are just several of many people who invested in defendants' scheme. I know this both through my work at Real Time and in correspondence with Real Time about the status of repayment when Real Time went into default on promissory notes. Real Time sometimes communicated with large numbers of people about the status of their investments. On or around July 12, 2007, Real Time held a meeting for at least some of these investors to discuss the state of their investments. Attached hereto as <u>Exhibit B</u> is a true and correct copy of an e-mail I received from Real Time showing a large number of recipients and hence a large number of similarly situated investors for that meeting on or around July 12, 2007.

10.   Tait was a principal officer of Real Time. Attached hereto as <u>Exhibit C</u> is a true and correct copy of a letter written by Tait to me in which she holds herself out as President of Real Time. I received this letter in the United States mail.

11.   As a principal officer of Real Time, Tait led investment presentations. Between December 2005 and June 2006 when I worked there, I personally attended at least 10 presentations that she led for potential investors. During the time I worked there, she led presentations at least one time per month.

12.   During the presentations, Tait talked about the "investment services" available to Real Time customers. She told investors that Real Time had developed a "unique and creative" way of sustaining returns on investment. She described the terms of the investment. She offered prospective investors the opportunity to invest by meeting with an advisor or principal of the firm. Attached hereto as <u>Exhibit D</u> is a true and correct copy of a power point presentation that Tait used during these

**DECLARATION OF XIAO MIN MA**                                           **C07-06512 JCS**

-2-

prospective investor presentations.  I have personally seen her use this PowerPoint presentation.  I have heard her make each of the representations contained in this document.

13.   At the end of the investor presentations I attended, Tait would often meet with potential investors to encourage them to invest.

14.   Tait often received calls from potential investors to discuss, among other things, the terms of the proposed investments. I know this through my work at ERS and directly for Verna Tait.

15.   Tait executed an agreement entitled "Terms and Agreement for RTI Investors."  I also signed this document.  Attached hereto as Exhibit E is a true and correct copy of this document.

16.   When I invested, Tait received my money on behalf of defendants.  Attached hereto as Exhibit F is a true and correct copy of an "agreement" whereby Tait acknowledged receipt of $200,000 from me on behalf of defendants.  I too signed the document.  Based on my work experience there, I know that Tait often received money on behalf of defendants from potential investors.

17.   My friend Weng Sheng Wong also invested.  On or around March 24, 2006, I was present when Tait received the sum of $20,000 on behalf of defendants with respect to his investment.  Attached hereto as Exhibit G is a true and correct copy of a receipt she signed indicating her receipt of the $20,000.  I too signed the document.

18.   Weng Sheng Wong invested again.  On or around March 11, 2007, I was present when Tait received the sum of $40,000 on behalf of defendants with respect to his investment.  Attached hereto as Exhibit H is a true and correct copy of a receipt she signed indicating her receipt of the $40,000.  I too signed the document.

19.   My friend Wai Pak also invested.  On or around December 8, 2006, I was present when Tait received the sum of $99,150 on behalf of defendants with respect to his investment. Attached

1  hereto as <u>Exhibit I</u> is a true and correct copy of a receipt she signed indicating her receipt of the

2  $99,150.  I too signed the document

3    20. My friend Michelle B. Ren also invested.  On or around November 20, 2006, I was

4  present when Tait received the sum of $27,000 on behalf of defendants with respect to her investment.

5  Attached hereto as <u>Exhibit J</u> is a true and correct copy of a receipt she signed indicating her receipt of

6  the $27,000.

7    21. But for the extraordinary returns offered by the promissory notes, plaintiffs would not

8  have purchased them.

9    22. I agreed to reinvest all of my original $200,000 investment on or around April 14,

10 2007.  <u>Exhibit E</u>, above, shows this reinvestment.

11   23. The only reason I decided to reinvest in this real estate scheme was to earn the

12 extraordinary returns promised by defendants.

13   I declare under penalty of perjury under the laws of the United States that the foregoing

14 is true and correct.  Executed this _26th_ day of March 2008 in Oakland, California.

                 /s/ Xiao Min Ma*

                 _____

                 XIAO MIN MA

*Plaintiffs' counsel John Claassen hereby attests that he has on file the holograph signature for Xiao Min Ma indicated by a "conformed" signature (/s/) within this e-filed document.

/s/ John Claassen, Esq.
_____
John Claassen, Esq.

**DECLARATION OF XIAO MIN MA**                C07-06512 JCS
-4-